IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER JIUNNMING WOO ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-1105 |
| ) | |
| JEFFREY BEARD, ) | |
| *et al.*, ) | |
| ) | Judge Arthur J. Schwab |
| Respondents. ) | |
| ) | Magistrate Judge |
| ) | Francis X. Caiazza |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

This is a federal habeas corpus case brought under 28 U.S.C. § 2254, and it is before the Court on objections filed by Petitioner Roger Jiunnming Woo (Doc. 24), to the Report and Recommendation ("R&R") of Magistrate Judge Francis X. Caiazza (Doc. 19). In the R&R, Magistrate Judge Caiazza recommends that Woo's petition be denied and that a certificate of appealability be denied.

Where, as here, objections have been filed, the Court is required to make a *de novo* determination as to those portions of the R&R to which objections were made. See 28 U.S.C.§ 636(b)(1). Accordingly, the Court has carefully examined *de novo* all claims raised by Woo in his objections. Also, in ruling on Woo's objections, the Court has carefully reviewed all aspects of the R&R and finds it to be thorough and well reasoned. In almost all respects, it requires no amplification or elucidation.

The Court writes now only to address limited, specific issues raised by Woo in his

objections. As discussed more fully below, the Court overrules Woo's objections and approves and adopts Magistrate Judge Caiazza's R&R in full, as supplemented herein.

## II.   FACTUAL AND PROCEDURAL HISTORY

Woo graduated from Columbia University in or around 1990 with a degree in metallurgical engineering. In 1994, he was employed as a metallurgist at Latrobe Steel. He was married and he and his wife were expecting their first child in August of that year. In or around the summer of 1994, he met the victim in this case, Sherri Lynn Aukerman. By September 1994, Woo and his wife had separated, and Aukerman had moved in with him.

By his own admission, Woo's affair with Aukerman was tumultuous. On September 18, 1994, he shot her in the head. Aukerman died from the injuries she sustained. In his defense at his subsequent trial for murder, Woo maintained, *inter alia*, that his gun accidentally discharged.[1] Woo's defense was belied, however, by a confession he gave to the police on September 23, 1994 in which he admitted that he shot Aukerman because he was upset with her. To further buttress its position that Woo intentionally shot Aukerman, the Commonwealth presented the testimony of a firearms examiner, who explained that the only way to discharge the gun used in the shooting was to apply at least five and one-half pounds of pressure to the trigger. The Commonwealth also presented evidence to establish that Woo and Aukerman may have had a troubled relationship and that on the day of the shooting she appeared to be upset. Finally, the Commonwealth presented witnesses that related incriminating comments that Woo made after the shooting.

---

[1] The evidence admitted at Woo's trial is thoroughly detailed in the state court decisions contained in the hard-copy record submitted to this Court by the Respondents.

The jury found Woo guilty of first-degree murder. The Honorable Richard E. McCormick, who presided over the trial, sentenced him to the mandatory term of life imprisonment. Woo's judgment of sentence was affirmed on direct appeal. He then filed a petition for post-conviction relief pursuant to the Pennsylvania Post-Conviction Relief Act (the "PCRA"). Therein, he claimed that his trial attorney, Thomas Ceraso, Esquire,[2] provided him with ineffective assistance of counsel because he failed to investigate and present a diminished-capacity defense.[3]

---

[2] Attorney Ceraso graduated from the University of Pittsburgh Law School in 1958. (PCRA Tr., 4, Dec. 15, 2000). His practice has concentrated on criminal defense for thirty years. (Id.)

[3] Diminished capacity is an extremely limited defense under Pennsylvania law. See Commonwealth v. Taylor, 876 A.2d 916, 926 (Pa. 2005); Commonwealth v. Legg, 711 A.2d 430, 444 (Pa. 1998); Commonwealth v. Terry, 521 A.2d 398, 404-09 (Pa. 1987); Commonwealth v. Zettlemoyer, 454 A.2d 937, 943 (Pa. 1982); Commonwealth v. Weinstein, 451 A.2d 1344, 1347 (Pa. 1982). Pennsylvania trial courts, like their federal counterparts, must carefully scrutinize psychiatric defense theories bearing on mens rea. See United State v. Pohlot, 827 F.2d 889 (3d Cir. 1987) (Holding that the federal Insanity Defense Reform Act of 1984, 18 U.S.C. § 17, did not bar all evidence of mens rea, but it does "require the exclusion of evidence that does not support a legally acceptable theory of a lack of mens rea." Id. at 906. "Psychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of mens rea. Presenting defense theories or psychiatric testimony to juries that do not truly negate mens rea may cause confusion about what the law requires." Id. at 890. "In light of strong danger of misuse, we join other circuits that have directed district courts to examine proffered psychiatric testimony carefully 'to determine whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues.'" Id. at 905).

Before a defendant may introduce expert mental health evidence at trial to support a diminished capacity defense, Pennsylvania law requires that he or she establish that the evidence is relevant and probative on the issue of specific intent. See e.g. Terry, 521 A.2d at 404 (and cases cited therein); see Commonwealth v. McCullum, 738 A.2d 1007 (Pa. 19999). Only expert mental health testimony that "speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent" is relevant and admissible. Id. (quoting Weinstein, 451 A.2d at 1347); Legg, 711 A.2d at 444-45. Where the proffered expert mental health evidence

(continued...)

During the PCRA proceedings, Woo established that, when he was age nine, his mother committed suicide and he discovered her body. He never received mental health counseling to cope with that traumatic event because in his Chinese culture, such assistance would have been viewed as shameful. He presented the expert testimony of two psychiatrists, Gary M. Glass, M.D. and Qi Hu, M.D., each of whom had examined him for the PCRA proceedings.[4] (See PCRA Tr., 33-106, Dec. 15, 2000). The doctors testified that in their expert opinion, the trauma that Woo experienced as a child resulted in mental disorders that so affected him that he lacked the specific intent to kill Aukerman. The Commonwealth countered Dr. Glass's and Dr. Hu's testimony with its own mental health expert, Martin Jerome Fialkov, M.D. (See PCRA Tr., 4-45, Aug. 22, 2002). Dr. Fialkov concluded that Woo did not suffer from any mental defect or disorder at the time of the shooting that affected his ability to form the specific intent to kill.

Judge McCormick denied PCRA relief. Commonwealth v. Woo, No. 3290 C 1994, slip

---

[3](...continued)
does not speak to those mental disorders that affect cognitive functions, the evidence "is irrelevant and hence inadmissible." Id. (quoting Weinstein, 451 A.2d at 1347). Moreover, the Pennsylvania Supreme Court has "repeatedly rejected the contention that evidence of a defendant's supposed inability to control his actions – by virtue of an 'irresistible impulse,' a 'compulsion,' or otherwise – is relevant to negate specific intent, and [the court has] consistently held that such evidence may not be admitted in support of a diminished capacity defense." Taylor, 876 A.2d at 926-27 (collecting cases); Zettlemoyer, 454 A.2d at 949 ("[N]either social maladjustment, nor lack of self-control, nor impulsiveness, nor psycho-neurosis, nor emotional instability, . . . nor all such conditions combined" "bear upon the narrow defense of diminished capacity.")

[4] Dr. Glass's and Dr. Hu's reports, which were admitted as PCRA EX. A and PCRA Ex. B respectively, are contained in the state court record attached to Woo's Petition for Post Conviction Collateral Relief (located at item number 49 in the record).

op. (C.P. Westmoreland Co. Apr. 7, 2003).[5] The Superior Court of Pennsylvania affirmed. Commonwealth v. Woo, No. 895 WDA 2003, slip op. (Pa.Super.Ct. Sept. 2, 2004)).[6] Woo then filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). He raises one claim: that he is entitled to a new trial because Attorney Ceraso provided him with ineffective assistance of counsel for failing to investigate and present a diminished capacity defense at trial.

The Court referred the case to Magistrate Judge Francis X. Caiazza. On October 25, 2006, Magistrate Judge Caiazza issued the R&R recommending that Woo's request for habeas relief be denied and that a certificate of appealability be denied. (Doc. 19). Woo then filed objections to the R&R. (Doc. 24).

III.   **ANALYSIS**

   A.   **Woo Failed to Establish That He Had a Viable Diminished Capacity Defense Available To Him At Trial**

Where, as is the case here, a petitioner contends that his counsel provided him with ineffective assistance for failing to present a certain defense at trial, the petitioner must demonstrate that the defense would have been a viable defense. Counsel cannot be found to have performed deficiently for failing to raise a meritless defense, nor can a petitioner demonstrate that he was prejudiced by counsel's failure to raise a defense that had no merit. Strickland v. Washington, 466 U.S. 668, 691 (1984) (the failure to pursue "fruitless" claims "may not be

---

[5] Judge McCormick's opinion is contained in the hard copy of the state court record and is identified as item number 113. It will be cited hereafter as "Item 113 at ___."

[6] The Superior Court's opinion is contained in the hard copy of the state court record and is identified as item number 126. It will be cited hereafter as "Item 126 at ___."

challenged as unreasonable."); Rompilla v. Horn, 355 F.3d 233, 248-49 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005); Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (counsel not ineffective for failing to raise meritless claims).

As set forth below, the state court rejected Dr. Glass's and Dr. Hu's testimony as irrelevant to the defense of diminished capacity. And, as a result, the state court held that Woo's claim of ineffective assistance of counsel failed because he did not have a viable diminished capacity defense available to him at trial, even if Attorney Ceraso obtained the evidence at issue and attempted to present it. (Item 113 at 2-7;[7] Item 126 at 2-6).

As the Magistrate Judge noted, the determination of whether Dr. Glass's and Dr. Hu's testimony was relevant, and hence admissible, is one of state law and is not reviewable by this Court. Preister v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Additionally, this Court is bound by the state court's credibility determinations regarding Dr. Glass and Dr. Hu, as federal habeas law provides this Court with no license to redetermine the credibility of witnesses whose demeanor has been observed by the state court. Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000).

However, under the standard of review set out in the Antiterrorism and Effective Death

---

[7] At the conclusion of his analysis of whether Woo's underlying claim had arguable merit, Judge McCormick wrote: "Diminished capacity is a limited defense challenging the ability of the accused to form the specific intent to kill, if the accused suffers from a mental disorder that affects the cognitive functions necessary to formulate the specific intent. Commonwealth v. Zettlemoyer, 454 A.2d 937 (Pa. 1982). *The evaluations and conclusory opinions of the experts viewed in the context of the record as a whole do not support a finding that the defense of diminished capacity was a viable defense available to [Woo].*" (Item 113 at 7 (emphasis added)).

6

Penalty Act of 1996 ("AEDPA"), the Court must review the reasonableness of both the state court's legal determination that Attorney Ceraso did not provide ineffective assistance of counsel, and its determination of the facts in light of the evidence presented at the PCRA hearing. 28 U.S.C. § 2254(d)(1) & (2). The Court finds, in accord with the Magistrate Judge's recommendation, that Woo failed to demonstrate that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of Federal law, as determined by the Supreme Court of the United States [Strickland v. Washington, 466 U.S. 668 (1984)]," or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" during the PCRA hearing. 28 U.S.C. § 2254(d)(1) & (2). Accordingly, he is not entitled to habeas corpus relief.

Woo's primary objection to the R&R is that the Magistrate Judge misinterpreted the state court's decision. He argues the state court made no finding regarding the relevance and admissibility of his experts' testimony. This objection plainly has no merit.

The Superior Court's determination that Dr. Hu's testimony was irrelevant and inadmissible to a diminished capacity defense was stated plainly in its opinion. It rejected Dr. Hu's testimony as "an unacceptable attempt to inject the notion of irresistible impulse into consideration." (Item 126 at 5-6 (citing Zettelmoyer[8])). It then held:

---

[8] In Zettelmoyer, the Supreme Court of Pennsylvania explained:

The doctrine of 'irresistible impulse' or in the modern psychiatric vernacular 'inability to control one's self' *whether used to denote legal insanity, or as a device to escape criminal responsibility for one's acts or to reduce the crime or its degree, has always been rejected in Pennsylvania.*

*Such a theory or philosophy would soon transfer the punishment of criminals*

(continued...)

7

> [B]oth in the report and during the hearing, [Dr. Hu] repeatedly advances [Woo's] poor impulse control, explosive temper, impaired judgment, and general volatility as the bases for a lack of ability to form specific intent.  However, as Legg, supra makes clear, "psychiatric evidence that a defendant lacked the ability to control his actions or that he acted impulsively is *irrelevant* and *inadmissible* on the issue of specific intent to kill."

(Item 126 at 5-6 (emphasis added)).  So clear is the Superior Court's conclusion regarding the irrelevance and inadmissibility of Dr. Hu's testimony that it is confounding that Woo is actually arguing that the state court did not reach this holding.

Additionally, the state court also determined that although Dr. Hu opined that Woo suffered from post traumatic stress disorder and alcoholism, he failed to "demonstrate the required nexus between [Woo's] illness and the lack of cognition *required for a diminished capacity defense to be appropriate.*"  (Item 126 at 5 (emphasis added)).  The state court's determination that Dr. Hu's testimony did not demonstrate a connection between Woo's disorders and his cognition *is* a finding that the doctor's testimony would have been irrelevant and inadmissible at trial because "psychiatric testimony is *irrelevant* … unless 'it speaks to mental disorders affecting the *cognitive functions* of [deliberation and premeditation] necessary to formulate a specific intent."  Zettlemoyer, 454 A.2d at 943 (emphasis added) (brackets in original) (quoting Weinstein, 451 A.2d at 1347).

As for Dr. Glass, he admitted in his report and at the PCRA hearing that Woo's mental

---

[8](...continued)
*from Courts to psychiatrists and would inevitably result in a further breakdown of law enforcement and eventual confusion and chaos.  Fortunately our cases are opposed to such an undesirable result.*

454 A.2d at 946 (emphasis in original) (quoting Commonwealth v. Tomlinson, 284 A.2d 687, 696 (Pa. 1971)).

8

disorders did not affect his cognitive functions. Both Judge McCormick and the Superior Court emphasized Dr. Glass's finding that Woo's "*cognitive functions are fine.*"[9] (Item 113 at 5 (emphasis added); Item 126 at 3-4). The Superior Court further explained that:

> [Dr. Glass] … testified that Woo suffered from bi-polar disorder, a genetic defect, as well as post traumatic stress disorder and alcoholism, resulting in an inability to form a specific intent to kill. However, the expert admitted that although post traumatic stress disorder could affect cognition, it did not do so in [Woo's] case. He also admitted that [Woo's] behavior just prior to the shooting, that is, his desire to scare the victim by pointing the gun at her because he was angry over her supposed infidelity, was both volitional and intentional.

(Item 126 at 3). The state court also concluded that Dr. Glass's ultimate conclusion that Woo lacked the specific intent to shoot Aukerman "has not been connected or related to the finding which precede it" (Item 113 at 6), and "emerges from a vacuum" (Item 126 at 4) – a phrase that certainly expresses that the state court found that Dr. Glass's conclusion lacked all support.

Thus, the state court expressly held that: (1) Dr. Glass's testimony established that *Woo's cognitive functions are fine*; and, (2) Dr. Glass's conclusion that Woo lacked specific intent to kill lacked support and foundation. It strains credulity to suggest, as Woo does in his objections, that those findings by the state court do not result in the concomitant determination that Dr. Glass's opinion was irrelevant and inadmissible on the issue of specific intent. As a matter of reason and

---

[9] Woo argues that Judge McCormick would not have permitted Dr. Glass to testify at the PCRA hearing if he believed that the opinions he proffered in his expert report – including his assessment that Woo's cognitive functions were "fine" – was deficient to establish a diminished capacity defense. The PCRA transcript reveals, however, that Judge McCormick informed Woo's PCRA counsel that Dr. Glass's expert report would "make it a lot more difficult for you than you might have expected[,]" but that he would nevertheless permit Dr. Glass to testify at the hearing. (PCRA Tr., 34-38, Dec. 15, 2000). In any event, Dr. Glass's testimony did not rehabilitate the failings of his report. At the PCRA hearing, Judge McCormick asked Dr. Glass about his conclusion that Woo's "cognitive functions are fine." In response, Dr. Glass admitted that although post traumatic stress disorder can affect cognition, "I don't think it did here." (PCRA Tr., 74, Dec. 15, 2000).

logic, the state court necessarily determined that the doctor's testimony would have been irrelevant and inadmissible under state law because, once again, "psychiatric testimony is *irrelevant* … unless 'it speaks to mental disorders affecting the *cognitive functions* of [deliberation and premeditation] necessary to formulate a specific intent.'"  See e.g. Zettlemoyer, 454 A.2d at 943 (quoting Weinstein, 451 A.2d at 1347); McCullum, 738 A.2d at 595-96.

And, although Dr. Glass and Dr. Woo each opined that Woo lacked the specific intent to kill Aukerman, the state court dismissed those conclusions as "not [being] connected or related to the finding which preceded it[,]" (Item 113 at 6), and "emerg[ing] from a vacuum," (Item 113 at 7; Item 126 at 4) because they were not supported by the doctors' underlying testimony and diagnoses.[10]  Under Pennsylvania law, conclusory expert testimony on an ultimate fact, such as the non-existence of specific intent, is irrelevant and inadmissible if that ultimate conclusion is unsupported by the expert's underlying testimony.  Terry, 521 A.2d at 403-06; Zettlemoyer, 454 A.2d at 943-47.

In sum, Woo's insistence that the state court did not reject his experts' testimony as irrelevant and inadmissible is simply not supportable upon review of the state courts' decisions.[11]

---

[10]   The Magistrate Judge characterized the state court's holding that Dr. Glass and Dr. Hu did not provide a sufficient nexus between Woo's mental illnesses and their opinions that Woo lacked the specific intent to kill as a finding of fact that is entitled to deference under AEDPA pursuant to 28 U.S.C. § 2254(d)(2) & (e)(1).  Woo counters that it is a "legal conclusion that the expert testimony and reports failed to demonstrate a viable diminished capacity defense[.]" (Doc. 24 at 17).  Either way, Woo's claim fails.  If it is a finding of fact, that finding was reasonable under the evidence presented at the PCRA hearing, 28 U.S.C. § 2254(d)(2), and Woo has failed to direct the Court to clear and convincing evidence that the state court was wrong, 28 U.S.C. § 2254(e)(1).  If it was a legal conclusion, it was a legal conclusion regarding Pennsylvania law, which is unreviewable by this court.  Preister, 382 F.3d at 402.

[11]   Woo argues that if the state court rejected Dr. Glass's and Dr. Hu's mental health
(continued...)

No amount of hyperbole or boldface type can distract this Court from the fact that Woo presented wholly unconvincing expert mental health testimony to support his PCRA petition, and that the state court rejected that evidence.

Woo questions why, if the state court actually did make a threshold determination regarding the admissibility of the evidence at issue, the court failed to cite to the Pennsylvania Rules of Evidence. This Court assumes, however, that the legal rule that only relevant evidence is admissible is so elementary that the state court did not find it necessary to cite to a specific evidentiary rule.

Woo also inexplicably contends that the Superior Court does not "ever mention" "Pennsylvania precedent dealing with admissibility of evidence generally or expert witnesses in particular[.]" (Doc. 24 at 14). This contention is patently incorrect. At the beginning of its analysis of whether Woo established that he had a viable diminished capacity defense, the Superior Court quoted from precedent of the Supreme Court of Pennsylvania that speaks directly about the "extremely limited defense" of diminished capacity and discusses what type of expert mental health evidence is relevant and admissible to support such a defense. (Item 126 at 2-3 (quoting Legg, 711 A.2d at 433 ("Psychiatric testimony that addresses mental disorders affecting the cognitive functions of deliberation and premeditation necessary to formulate a specific intent

---

[11](...continued)
testimony as irrelevant and inadmissible, then the state court violated his right to "presenting a viable [and indeed, his only] defense of diminished capacity." (Doc. 24 at 16 (brackets in original)). There is nothing unconstitutional, however, about the Commonwealth of Pennsylvania limiting the evidence that a defendant may submit to support a defense that he lacked the mens rea necessary to form the specific intent to kill to that evidence which is relevant to the cognitive function of specific intent. The state court did not hold, as Woo would have this Court believe, that evidence on the issue of Woo's mens rea would be inadmissible; rather, the state court determined that *Woo failed to proffer evidence that was relevant to his mens rea.*

is admissible. However, psychiatric evidence that a defendant lacked the ability to control his actions or that he acted impulsively is irrelevant and inadmissible on the issue of the defendant's specific intent to kill."); Zettlemoyer, 454 A.2d at 944). Immediately after its quotation of Legg and Zettlemoyer, the Superior Court reviews and affirms Judge McCormick's rejection of Dr. Glass's and Dr. Hu's testimony. The Superior Court then cites to Legg and Zettlemoyer again. (Item 126 at 5-6). Thus, contrary to Woo's objection, the Superior Court cites to and relies upon Pennsylvania Supreme Court precedent that outlines the parameters of what type of expert mental health evidence is admissible to support a diminished capacity defense.

Woo also argues that the state court usurped the jury's function by evaluating and rejecting Dr. Glass's and Dr. Hu's testimony. His suggestion that that he somehow created a jury question that entitles him to a new trial reflects a fundamental misunderstanding of post-conviction relief. Woo's judgment of sentence on first-degree murder has been affirmed on direct appeal. To be entitled to a new trial on a post-conviction motion, he must establish that his constitutional rights have been violated. With respect to a claim that Attorney Ceraso deprived him of his Sixth Amendment right to effective assistance of counsel, the state court must evaluate whether the evidence that Woo claims Attorney Ceraso failed to obtain would have been relevant and admissible, and, if the evidence was, whether its absence from trial prejudiced him. See e.g., Strickland, 466 U.S. at 688-94; McCullum, 738 A.2d at 1009-10. In making that determination in this case, the state court found that the evidence that Woo presented to support his claim was not credible, was irrelevant, and thus was inadmissible. It is necessary and entirely

appropriate for a state court to make those threshold findings on a post-conviction motion.[12]  Id.

Finally, Woo insist that Jacobs v. Horn, 395 F.3d 92 (3d Cir. 2005) compels relief.  In that case, the Court of Appeals held that the petitioner demonstrated that he was entitled to habeas relief because his trial counsel failed to obtain available expert psychiatric testimony to support the diminished capacity defense that he had presented at trial.  Jacobs, 935 F.3d at 101-06.  As the Magistrate Judge explained, Jacobs is distinguishable from Woo's case because in that case the petitioner presented credible mental health evidence at his PCRA hearing, and in this case, Woo did not.  Id.; Commonwealth v. Jacobs, 727 A.2d 545, 548-49 (Pa. 1999).  In Jacobs, there was not, as there is here, an underlying finding by the state court that the experts presented by the petitioner failed to demonstrate that his mental disorders affected his cognitive functions.  In Jacobs, the petitioner's mental health expert did not admit that his cognitive functions were fine, as Dr. Glass did here.  In contrast, the mental health experts in Jacobs demonstrated during the PCRA proceedings that the petitioner's mental disorders "substantially hindered" his cognitive functions.  Id. at 101.  Nor did the experts in Jacobs submit testimony and reports that merely advanced the petitioner's poor impulse control and general volatility, as Dr. Hu did here.  Rather, Jacobs centered upon whether counsel failed to present *relevant evidence that would have been admissible at trial*, a very different issue than that which is presented in the instant case.

---

[12]  Woo would have this Court believe that he is entitled to a new trial just because he *produced* mental health testimony to support his claim that he had a diminished capacity defense available to him, notwithstanding the fact that the state court completely rejected that evidence.  That simply is not the law.  If it was, any Pennsylvania prisoner convicted of first-degree murder that presented expert mental health testimony at a PCRA hearing that he or she lacked the specific intent to kill would be entitled to a new trial, regardless of the credibility of the expert's testimony and ultimate opinion.

### B. Woo Cannot Demonstrate That He Was Prejudiced By Attorney Ceraso's Failure to Develop and Present A Diminished Capacity Defense

Woo's claim of ineffective assistance of counsel additionally fails because he cannot show that he was prejudiced by Attorney Ceraso's alleged deficient representation. Dr. Glass's and Dr. Hu's testimony was so weak and unpersuasive that Woo cannot satisfied his burden of establishing that he was prejudiced, *i.e.*, that there is a reasonable probability that the outcome of his trial would have been different if counsel had been permitted to present their testimony at trial. Strickland, 466 U.S. at 694.

In Zettlemoyer v. Fulcomer, 923 F.2d 284, 297 (3d Cir.1991), the Court of Appeals held that a federal habeas court must consider evidence of specific intent when determining whether an attorney's failure to present a diminished capacity defense constituted ineffective assistance. Therefore, even if this Court assumed, for the sake of argument, that Attorney Ceraso performed unreasonably by failing to obtain and present evidence in support of a diminished capacity defense – Woo cannot establish Strickland prejudice in the face of compelling evidence presented at trial establishing an intent to kill. He confessed to the police that he intentionally shot Aukerman because he was upset with her. And, he shot her in the head, which is evidence of specific intent to kill under Pennsylvania law. Zettlemoyer, 923 F.3d at 297 (under Pennsylvania law, "[d]ischarging a deadly weapon aimed at a vital part of the body demonstrates specific intent to kill.")

### IV. CONCLUSION

For the foregoing reasons, the Court overrules Woo's objections to the Magistrate Judge's R&R and approves and adopts the R&R in full, as supplemented herein.

An appropriate Order follows.

BY THE COURT:

Date: December 27, 2006

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge